STATE OF WISCONSIN    :    CIRCUIT COURT    :    OZAUKEE COUNTY

PETERSEN PRODUCTS CO., LLC

a Wisconsin limited liability company
400 Wheeler Ave.
Freedonia, WI 53021

            Plaintiff,

     v.

HIBBARD INSHORE, LLC,

a foreign limited liability company
2285 N. Opdyke Road, Suite A
Auburn Hills, MI 48326

            Defendant.

Case No. 2014CV168

Case Code: 30303

Authenticated/Filed
Ozaukee County Circuit

APR 17 2014

Mary Lou Mueller
Clerk of Circuit Court/
Register in Probate

## SUMMONS

THE STATE OF WISCONSIN

     To each Defendant named above:

     You are hereby notified that the plaintiff named above has filed a lawsuit or other legal

action against you. The complaint, which is attached, states the nature and basis of the legal action.

     Within 20 days of receiving this summons, you must respond with a written answer, as

that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The Court may

reject or disregard an answer that does not follow the requirements of the statutes. The answer

must be sent or delivered to the Court, whose address is: Ozaukee County Clerk of Court, 1201

South Spring Street, Port Washington, WI 53074, and to Plaintiff's attorneys, Michael Best &

Friedrich LLP, 100 East Wisconsin Avenue, Suite 3300, Milwaukee, WI 53202. You may have

an attorney help or represent you.

2014 APR 17 PM 2:40   OZAUKEE COUNTY CLERK OF CIRCUIT COURT

If you do not provide a proper answer within 20 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this _17th_ day of _April_, 2014.

MICHAEL BEST & FRIEDRICH LLP

By: _____

Aaron H. Kastens, SBN 1045209
ahkastens@michaelbest.com
Christopher E. Nyenhuis, SBN 1076044
cenyenhuis@michaelbest.com
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Ph:    414.271.6560
Fax:   414.277.0656

Attorneys for Plaintiff
Petersen Products Co., LLC

STATE OF WISCONSIN : CIRCUIT COURT : OZAUKEE COUNTY

---

PETERSEN PRODUCTS CO., LLC,

a Wisconsin limited liability company
400 Wheeler Ave.
Fredonia, WI 53021,

        Plaintiff,

    v.

HIBBARD INSHORE, LLC,

a foreign limited liability company
2285 N. Opdyke Road, Suite A
Auburn Hills, MI 48326,

        Defendant.

Case No. 2014CV168

Case Code: 30303

Authenticated/Filed
Ozaukee County Circuit

APR 1 7 2014

Mary Lou Mueller
Clerk of Circuit Court/
Register in Probate

**Assigned to the Honorable
Sandy A Williams, Branch 3**

---

## COMPLAINT

---

NOW COMES the Plaintiff, Petersen Products Company, LLC ("Petersen Products"), by its attorneys, Michael Best & Friedrich LLP, and for its Complaint against Defendant, Hibbard Inshore, LLC ("Hibbard"), alleges as follows.

<u>PARTIES</u>

1.    Plaintiff, Petersen Products, is a limited liability company organized under the laws of the State of Wisconsin, with a principal place of business at 421 Wheeler Avenue, Fredonia, Wisconsin, 53021.

2.    Defendant, Hibbard, is a limited liability company organized under the laws of the State of Michigan, with an address of 2285 North Opdyke Road, Suite A, Auburn Hills, Michigan, 48328. Hibbard's registered agent is Bradley Hibbard.

2014 APR 17 PM 2: 40
CLERK OF CIRCUIT COURT

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter under Wis. Stat. §801.04(1).

4.    This Court has jurisdiction over Hibbard under Wis. Stat. §801.05(5), as this action arises out of promises made by Hibbard to pay for goods to be manufactured, and services to be performed, in Wisconsin for Hibbard by Petersen Products. Additionally, upon information and belief, Hibbard is subject to general jurisdiction under Wis. Stat. §801.05(1)(d).

5.    Venue is proper in this Court under Wis. Stat. §801.50(2), as acts and omissions relating to this claim occurred in Ozaukee County.

## FACTUAL ALLEGATIONS

6.    In 2011, Hibbard approached Petersen Products with a request that Petersen Products submit a proposal to design, develop, engineer, and manufacture a bulkhead and bulkhead test fixture.

7.    On or about November 9, 2011, Hibbard sent to Petersen Products Purchase Order No. 511401B-1, wherein Hibbard requested that Petersen Products design and construct the bulkhead for Hibbard (the "Bulkhead P.O."). The amount of the Bulkhead P.O. was $185,440.

8.    On November 9, 2011, Petersen Products sent to Hibbard an order confirmation regarding the Bulkhead P.O.

9.    On or about December 1, 2011, Hibbard sent to Petersen Products Purchase Order No. 511401B, in which Hibbard requested that Petersen Products design and manufacture a test fixture for the bulkhead (the "Test Fixture P.O."). The amount of the Test Fixture P.O. was $45,520.

10.    On or about December 15, 2011, Petersen Products sent to Hibbard an order confirmation regarding the Test Fixture P.O.

2

11.     Neither the Test Fixture P.O. nor the corresponding order confirmation stated or referenced a required delivery date.

12.     Neither the Bulkhead P.O. nor the corresponding order confirmation stated or referenced a required delivery date.

13.     Petersen Products' order confirmation for the Bulkhead P.O. stated a total order price of $169,000.  The order confirmation price took into account a credit of $16,440 from the Purchase Order total of $185,440, because Hibbard had already paid said amount.

14.     Throughout early to mid-2012, Petersen Products worked diligently to design and manufacture the bulkhead pursuant to the requirements and specifications provided to it by Hibbard.

15.     Throughout the project, Petersen Products tested the bulkhead using the test fixture that Petersen Products manufactured for Hibbard pursuant to the Test Fixture P.O. Throughout the duration of the project, Petersen Products kept Hibbard informed as to the status of the project and any challenges it was facing in manufacturing and/or testing of the product.

16.     In May of 2012, Petersen Products informed Hibbard that it had retained an outside engineer on to the project to assist it in completing the project for Hibbard.

17.     Hibbard approved Petersen Products' retention of an engineer to assist with the project, stating, "Thanks for the update and taking these additional steps."

18.     In June of 2012, Petersen Products informed Hibbard that it had created an alternative design that might better meet Hibbard's needs.

19.     In or around June of 2012, Petersen Products reported to Hibbard that it was able to install the bulkhead and make a very good seal at the specified 150 psi head pressure.

3

20.     Petersen Products then discussed with Hibbard the force that would be required to remove the bulkhead.

21.     At that time, Hibbard first informed Petersen Products that the 10-15 psi reverse differential pressure that would be required to remove the bulkhead was greater than it believed would be appropriate for Hibbard's intended application. As a result, Petersen Products had to perform additional engineering and testing to find a solution to Hibbard's newly-identified specification.

22.     In a detailed email dated June 14, 2012, Petersen Products summarized the status of the project for Hibbard. In the same email, Petersen Products acknowledged the possibility that Hibbard's customer might be facing certain time constraints, but Petersen Products reaffirmed its commitment to completing the project.

23.     Hibbard did not respond in any fashion to the June 14, 2012 email. In particular, it did not ask Petersen Products to stop working on the project.

24.     On June 20, 2012, Brad Hibbard of Hibbard sent Petersen Products an email stating, "I am working with my client regarding schedule. Also, if we change the design, we have to have the end client sign off on it."

25.     After Hibbard's June 20, 2012 email, Hibbard did not provide any further update on the issue of the proposed alternative design or schedule. Having received no follow-up from Hibbard, Petersen Products continued to work on the project.

26.     Throughout the rest of June and July, 2012, Petersen Products continued to work on the project and continued to update Hibbard as to the status of the project.

27.     Between July 23 and July 27, 2012, Petersen Products sent to Hibbard updated information and updated drawings with regard to the proposed revised bulkhead concept.

4

28.    Hibbard did not respond to Petersen Products' late July emails regarding the bulkhead concept, except on July 23, 2012, at which time Hibbard asked Petersen Products additional questions about the design.

29.    On August 2, 2012, Petersen Products emailed Hibbard, again, reiterating its request that Hibbard provide its thoughts on the revised bulkhead concept, which Petersen Products represented would meet Hibbard's needs.

30.    Hibbard did not respond with any thoughts on the revised bulkhead concept.

31.    Instead, on or about August 6, 2012, Hibbard sent letter by which it immediately cancelled its order with Petersen Products.

32.    Hibbard did not provide any advance notice of the cancellation.

33.    Because Petersen Products had invested substantial resources into the project for Hibbard, Petersen Products sent to Hibbard an invoice totaling $207,800 for the balance due on the project. This amount represented the total of the Bulkhead P.O. and the Test Fixture P.O., less $23,160, which Hibbard had previously paid.

## CAUSES OF ACTION

### Count I:  Breach of Contract

34.    Petersen Products restates and realleges Paragraphs 1 through 33 as if fully set forth herein.

35.    Petersen Products contracted with Hibbard to design, develop, and engineer a bulkhead concept, as well as to fabricate and test the bulkhead. Petersen Products also contracted with Hibbard to engineer and manufacture a bulkhead test fixture.

36.    The parties' contract did not specify any time for delivery of the final product.

5

37.     Despite the lack of a specified delivery date, Hibbard several times extended Petersen Products' time for performance and never provided a fixed delivery date.

38.     Petersen Products complied with its obligations under the contract.

39.     Hibbard terminated the contract without prior notice to Petersen Products.

40.     Hibbard breached the contract by terminating it without notice and by failing to pay for the goods and services that Petersen Products provided to Hibbard.

41.     Hibbard's breaches damaged Petersen Products.

42.     Petersen Products is entitled to damages in an amount to be determined at trial, but no less than $207,800.

## SECOND CAUSE OF ACTION

### Count II (In the Alternative): Quantum Meruit

43.     Petersen Products restates and realleges Paragraphs 1 through 33 as if fully set forth herein.

44.     Petersen Products provided goods and services to Hibbard under the reasonable expectation that it would be compensated for those goods and services.

45.     Hibbard has not paid Petersen Products reasonable compensation for the goods and services provided.

46.     It is inequitable to allow Hibbard to retain the benefit of the goods and services provided without providing reasonable compensation.

WHEREFORE, Petersen Products respectfully requests the following relief:

A.      Judgment in its favor for an amount to be determined at trial;

B.      Costs, fees, and interest as allowed by contract or at law; and

C.      Any and all such other relief as this Court deems appropriate and just.

6

Dated this /7th day of April , 2014.

MICHAEL BEST & FRIEDRICH LLP

By: _____

Aaron H. Kastens, SBN 1045209
ahkastens@michaelbest.com
Christopher E. Nyenhuis, SBN 1076044
cenyenhuis@michaelbest.com
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Ph: 414.271.6560
Fax: 414.277.0656

Attorneys for Plaintiff
Petersen Products Co., LLC

7

STATE OF WISCONSIN   :   CIRCUIT COURT   :   OZAUKEE COUNTY

---

PETERSEN PRODUCTS CO., LLC
a Wisconsin limited liability company,

        Plaintiff,

    v.

HIBBARD INSHORE, LLC
a Michigan limited liability company,

        Defendant.

Case No. 14-CV-168
Case Code: 30303

Authenticated/Filed
Ozaukee County Circuit

MAY 0 6 2014

Mary Lou Mueller
Clerk of Circuit Court/
Register in Probate

---

**DEFENDANT'S ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

---

      NOW COMES Defendant, HIBBARD INSHORE LLC, by and through counsel, and as and for its Answer, Affirmative Defenses, and Counterclaim, states as follows:

    1.     Defendant admits the allegations in Paragraph 1.

    2.     Defendant admits the allegations in Paragraph 2.

    3.     Defendant admits the allegations in Paragraph 3.

    4.     Defendant admits the allegations in Paragraph 4.

    5.     Defendant admits allegations in Paragraph 5.

    6.     Defendant denies the allegations in Paragraph 6.

    7.     Defendant admits in response to Paragraph 7 that Purchase Order No. 511401B-1 was sent to Plaintiff on or about November 9, 2011 in the amount of $185,440 for the design and construction of a bulkhead to specifications, and denies any further allegations or inferences.

1

8.	Defendant admits in response to Paragraph 8 that on or about November 9, 2011, Plaintiff sent an order confirmation regarding Purchase Order No. 511401B-1, and denies any further allegations or inferences.

9.	Defendant admits in response to Paragraph 9 that Purchase Order No. 511401B was sent to Plaintiff on or about December 1, 2011, for the design and manufacture of a test fixture for the bulkhead to specifications – a device necessary to test the bulkhead designed and manufactured under Purchase Order No. 511401B-1, and that the amount was $45,520, and denies any further allegations or inferences.

10.	Defendant admits in response to Paragraph 10 that on or about December 15, 2011 Plaintiff sent an order confirmation regarding Purchase Order No. 511401B, and denies any further allegations or inferences.

11.	Defendant denies the allegations in Paragraph 11.

12.	Defendant denies the allegations in Paragraph 12.

13.	Defendant denies the allegations in Paragraph 13.

14.	Defendant denies the allegations in Paragraph 14.

15.	Defendant admits in response to Paragraph 15 that Plaintiff conducted testing on the bulkhead and communicated with Defendant regarding the problems manufacturing and testing the bulkhead and denies any additional inferences or conclusions that Plaintiff performed as required under the Purchase Order.

16.	Defendant admits in response to Paragraph 16 that a new outside engineer was hired in May 2012, and denies any inference that the retention of an outside engineer excused Plaintiff from failing to design and produce a functional bulkhead fixture pursuant to project specifications.

2

17.     Defendant admits in response to Paragraph 17 that it approved of the retention of a new outside engineer, and denies any inference that the retention of an outside engineer excused Plaintiff from failing to design and produce a functional bulkhead fixture pursuant to project specifications.

18.     Defendant admits in response to Paragraph 18 that Plaintiff informed Defendant of an alternative design and denies any additional inferences or conclusions that Plaintiff performed as required under the Purchase Order. .

19.     Defendant denies the allegations in Paragraph 19.

20.     Defendant admits the allegations in Paragraph 20 that the force to remove the bulkhead was discussed and denies any additional inferences or conclusions that Plaintiff performed as required under the Purchase Order.

21.     Defendant denies the allegations in Paragraph 21.

22.     Defendant admits in response to Paragraph 22 that on June 14, 2012 Plaintiff sent an email to Defendant regarding the bulkhead project, and denies all other allegations and/or inferences.

23.     Defendant denies the allegations in Paragraph 23.

24.     Defendant admits the allegations in Paragraph 24 that discussions were held regarding adjustment of the schedule and design change and denies any additional inferences or conclusions that Plaintiff performed as required under the Purchase Order.

25.     Defendant denies the allegations in Paragraph 25.

26.     Defendant admits the allegations in Paragraph 26 that Plaintiff continued to update Defendant regarding the status of the bulkhead project and denies any additional inferences or conclusions that Plaintiff performed as required under the Purchase Order.

27.     Defendant admits the allegations in Paragraph 27 that Plaintiff sent updated information regarding the alternative bulkhead design and denies any additional inferences or conclusions that Plaintiff performed as required under the Purchase Order.

28.     Defendant denies the allegations in Paragraph 28.

29.     Defendant denies the allegations in Paragraph 29.

30.     Defendant denies the allegations in Paragraph 30.

31.     Defendant admits in response to Paragraph 13 that on August 6, 2012, Defendant canceled its order with Plaintiff for (including but not limited to) testing failures, engineering flaws, project delays, failure of seals to operate, metal structure deficiencies and untimely delivery.

32.     Defendant denies the allegations in Paragraph 32.

33.     Defendant denies the allegations in Paragraph 33.

34.     Defendant restates its responses to Paragraphs 1 through 33 as if fully set forth herein.

35.     Defendant admits the allegations as set forth in Paragraph 35 of the Complaint to the extent consistent with responses already submitted herein, and denies the allegations in all other respects.

36.     Defendant denies the allegations in Paragraph 36.

37.     Defendant denies the allegations in Paragraph 37.

38.     Defendant denies the allegations in Paragraph 38.

39.     Defendant denies the allegations in Paragraph 39.

40.     Defendant denies the allegations in Paragraph 40.

41.     Defendant denies the allegations in Paragraph 41.

4

42.      Defendant denies the allegations in Paragraph 42.

43.      Defendant restates its responses to Paragraphs 1 through 42 as if fully set forth herein.

44.      Defendant denies the allegations in Paragraph 44.

45.      Defendant denies the allegations in Paragraph 45.

46.      Defendant denies the allegations in Paragraph 46.

## AFFIRMATIVE DEFENSES

1.      Plaintiff may have failed to state a claim on which relief may be granted.

2.      Plaintiff is estopped from raising some or all of the claims made in the Complaint.

3.      Some or all of the claims raised by Plaintiff in the Complaint are barred, in whole or in part, by the doctrine of laches.

4.      Some or all of the claims raised by Plaintiff in the Complaint are barred, in whole or in part, by the doctrine of unclean hands.

5.      Some or all of the claims raised by Plaintiff in the Complaint are barred, in whole or in part, by Plaintiff's misrepresentation, including Plaintiff's misrepresentation regarding its capability to perform to the specifications of the contracts.

6.      Some or all of the claims raised by Plaintiff in the Complaint are barred, in whole or in part, because Plaintiff was the first party to materially breach the contracts between itself and Defendant.

7.      Some or all of the claims raised by Plaintiff in the Complaint are barred, in whole or in part, because Plaintiff failed to perform or negligently performed its obligations under the contracts.

5

8. Some or all of the claims raised by Plaintiff in the Complaint are barred, in whole or in part, because Plaintiff assumed the risk associated with an inability to perform under the contracts.

9. Plaintiff failed to mitigate its claimed damages.

## COUNTERCLAIM

1. In January, 2011 Defendant approached Plaintiff regarding the design and manufacturing of a bulkhead. Defendant was drawn to Plaintiff, in part, due to its represented technical ability, experience and skill – including developing customized and unique systems.

2. As discussed, the bulkhead design was required to conform to technical specifications, including but not limited to: (1) size; (2) ability to withstand certain amounts of pressure; (3) functioned correctly (i.e. did not leak); and (4) was able to be removed and re-installed at different locations.

3. After these initial discussions regarding project specifications and requirements, on or about January 12, 2011, Plaintiff sent Preliminary Estimate #1101120930 to Defendant.

4. Between January and November, 2011, Plaintiff and Defendant engaged in continuing negotiations over the costs and timing of the bulkhead.

5. During this negotiating period, Plaintiff assured and represented to Defendant that it had the technical ability, experience and skill to design and manufacture a functional bulkhead according to project specifications.

6. Defendant relied on Plaintiff's professed experience as the specifications of the bulkhead called for a custom and highly technical project. Had Defendant doubted Plaintiff's ability, experience and skill, it would have sought alternative engineering firms for the bulkhead project.

6

7.     In reliance on Plaintiff's representations that it would be able to timely complete the project, on November 9, 2011, Defendant issued Purchase Order 511401B-1 to Plaintiff for the design and development of the bulkhead.

8.     On November 9, 2011, Plaintiff sent Defendant an order confirmation for Purchase Order 511401B-1. The total value of Purchase Order 511401B-1 was $185,440.

9.     The bulkhead Purchase Order 511401B-1 was a "fixed price" project, meaning that Plaintiff would be paid only the contracted price regardless of the costs incurred or number of hours of work spent by Plaintiff.

10.    As part of the Purchase Order and order confirmation, Defendant made an initial payment to Plaintiff of $23,160 for the design and manufacturing of the bulkhead.

11.    The remaining balance for the Purchase Order ($162,280) was not due until delivery of the functional bulkhead.

12.    At the time the Purchase Order was agreed to, Plaintiff was aware that the final manufacturing deadline for the bulkhead was time sensitive and needed to be complete by February, 2012.

13.    The Purchase Order was not intended to be a fully integrated document; rather, the technical specifications and performance requirements for the bulkhead were discussed and agreed to between Plaintiff and Defendant prior to and throughout the project, including but not limited to: the initial Preliminary Estimate, the Purchase Order, oral conversations and emails between Plaintiff and Defendant.

14.    Under the Purchase Order, the bulkhead was intended to be a phased project, meaning that Plaintiff would first design the bulkhead on paper and submit it to whatever testing and quality control protocols deemed appropriate. Once confident that the design would function

7

per project specifications, Plaintiff would then proceed to the actual manufacturing of the bulkhead.

15.     The intent of the phased project was to avoid time and cost intensive "on-site" issues or modifications.

16.     Between November 9, 2011 and February 2012, Defendant was led to believe by Plaintiff that the functional bulkhead would be delivered on schedule.

17.     By early February, 2012, Plaintiff had informed Defendant that it had completed the design and that the bulkhead would be manufactured and delivered by February 24, 2012.

18.     On February 28, 2012, Plaintiff informed Defendant that the bulkhead still required more tests and would not be ready for a February shipping date.

19.     In light of the significant time and expense invested by Defendant into Plaintiff's bulkhead design, as well as Plaintiff's continued representations that it would promptly resolve the problems and provide a functional bulkhead to specifications, Defendant arranged for more time before delivery.

20.     Despite the additional time afforded and the assurances provided, Plaintiff was unable to resolve the design and manufacturing flaws in its bulkhead.

21.     For example, as of April 8, 2012, the bulkhead was still leaking under the pressure constraints required by project specifications.

22.     By early May, 2012, Defendant began to have concerns over the quality and functionality of Plaintiff's design. For example, on May 4, 2012, Defendant learned that instead of designing a functional bulkhead that tested true on paper and/or the use of scale models, Plaintiff was attempting to resolve the leak and pressure issues through costly trial and error methodology – i.e. build this iteration of the bulkhead and see if it works.

8

23.     Moreover, on May 4, 2012, Defendant learned that Plaintiff was actually receiving an independent benefit from this trial and error "learning experience." In addition to the contract fees that would have been paid by Defendant upon delivery of a functional bulkhead, Plaintiff admitted that it had received requests for similar technology and that it "hope[d] to make up for the cost of learning on this project."

24.     In another attempt to resolve its problems in the design and manufacturing of the bulkhead, in May, 2012, Plaintiff notified Defendant that it hired an additional mechanical engineer to assist with completing the bulkhead project.

25.     Again, in light of Plaintiff's continued assurances for progress and the retention of another "expert" engineer, Defendant arranged additional time for Plaintiff to finish the project, at the expense of Defendant's own reputation and good-will.

26.     Despite the additional extension of time, as of June, 2012, Plaintiff was still unable to resolve its design and manufacturing problems to deliver a functional bulkhead.

27.     On June 1, 2012, Plaintiff sent an email to Defendant indicating that it did not have the technical ability, experience and skill to design and manufacture the bulkhead to project specifications, contrary to its representations throughout 2011. Specifically, Plaintiff stated, "This is taking far more time and money than we ever anticipated but we are moving up the learning curve and now have an engineer who better understands the requirements."

28.     On June 14, 2012, Plaintiff sent yet another email demonstrating that it did not have the technical ability, experience and skill necessary to design the bulkhead to project specifications, stating "Our engineer . . . has now reviewed the early design and found several problems with the analysis and assumptions . . . We also now have a better understanding of the issues involved."

29.     In that same June 14 email, Plaintiff acknowledged that it would understand if Defendant terminated the contract due to Plaintiff's inability to perform, stating "If your customer can continue with patience we are still confident we can solve the problems required and complete the project. Obviously if others have an alternative quicker fix or better solution we understand your customer needs to do what they deem best . . ."

30.     Throughout this time period, Defendant was weighing its options between affording Plaintiff even more time to complete the bulkhead or taking Plaintiff up on its suggestion to terminate the contract and search out other possible engineering firms.

31.     As August, 2012 approached, Plaintiff still had not produced a functional bulkhead per project specifications.

32.     Accordingly, Defendant made the decision to take Plaintiff up on its earlier June offer and terminated the contract. On August 6, 2012, Defendant sent a formal notice of termination and request for refund for all monies paid.

33.     Defendant premised its request for a full refund on the rationale that, among other things: (1) the design developed and submitted by Plaintiff was faulty in that it would not perform to project specifications; (2) Defendant still did not have a functional bulkhead, six months after the required delivery date; and (3) Defendant had suffered substantial reputational and good-will damage in the community for its own failure to deliver the bulkhead to its customer.

34.     After terminating the contract with Plaintiff, Defendant retained another engineering company to design and manufacture a bulkhead per project specifications.

35.     The new engineering company was able to design and manufacture a functioning bulkhead to project specifications in a timely and cost-effective manner.

10

36. The functional design was not premised on any drawings or iterations of the bulkhead designed or manufactured by Plaintiff.

37. Defendant did not receive any benefit from Plaintiff's "trial and error" methodology.

38. To date, Defendant has not received a functional bulkhead from Plaintiff according to specifications, repayment of the $23,160 already paid to Plaintiff, payment for the additional costs and shipping fees caused by retaining another engineering firm, or payment for damages incurred to Defendant's business reputation and good-will.

## CAUSES OF ACTION

### Count I:  Breach of Contract for Failure to Design

39. Defendant restates and incorporates Paragraphs 1 through 38 as if fully set forth herein.

40. Plaintiff and Defendant entered into a valid and enforceable contract for the design of a bulkhead that would perform to project specifications.

41. Plaintiff materially breached the contract by failing to design a bulkhead that would perform to project specifications, entitling Defendant to cancel the contract.

42. As a direct and proximate result of Plaintiff's breach of contract and Defendant's cancellation, Defendant has suffered damages and is entitled to recover those damages from Plaintiff pursuant to UCC 2-711.

### Count II:  Breach of Contract for Failure to Develop

43. Defendant restates and incorporates Paragraphs 1 through 42 as if fully set forth herein.

11

44.     Plaintiff and Defendant entered into a valid and enforceable contract for the manufacturing of a bulkhead that would perform to project specifications.

45.     Plaintiff has materially breached the contract by failing to manufacture a bulkhead that would perform to project specifications, entitling Defendant to cancel the contract.

46.     As a direct and proximate result of Plaintiffs' breach of contract and Defendant's cancellation, Defendant has suffered damages and is entitled to recover those damages from Plaintiff pursuant to UCC 2-711.

Count III:  Breach of Contract for Failure to Provide Services in a Skilled and Diligent Fashion

47.     Defendant restates and incorporates Paragraphs 1 through 46 as if fully set forth herein.

48.     Plaintiff and Defendant entered into a valid and enforceable contract for the design and manufacturing of a bulkhead that would perform to project specifications.

49.     Plaintiff has materially breached the contract by failing to perform work and/or services in a skillful, careful and diligent manner.

50.     As a direct and proximate result of Plaintiff's breach of contract, Defendant has suffered damages.

Count IV:  Fraudulent Inducement to Contract

51.     Defendant restates and incorporates Paragraphs 1 through 50 as if fully set forth herein.

52.     Plaintiff materially represented to Defendant that it could competently and timely design and manufacture a bulkhead that would perform to project specifications.

53.     Plaintiff knew or should have known that its representations were false, including but not limited to: (1) that it did not have the technical ability, experience and skill to design and

12

manufacture a bulkhead to Defendant's specifications; and (2) would need to "learn on the job" through trial and error methodology to attempt to manufacture a bulkhead that would perform to project specifications.

54. Plaintiff intended for Defendant to rely upon its representations when entering into the contract.

55. Defendant did in fact rely on the representations made by Plaintiff when entering into the contract.

56. As a direct and proximate result of Plaintiff's fraudulent inducement to contract, Defendant has suffered damages.

### Count V: Unjust Enrichment

57. Defendant restates and incorporates Paragraphs 1 through 56 as if fully set forth herein.

58. Plaintiff will be unjustly enriched if permitted to retain the benefits received from the bulkhead project without compensation to Defendant.

59. Prior to the bulkhead project at issue, Plaintiff did not have the technical ability, experience or skill to design and manufacture a bulkhead to perform to the specifications required.

60. Through the course of the project, through trial and error methodology or otherwise, Plaintiff has gained technical ability, experience and skill to design and manufacture a bulkhead to perform to similar specifications.

61. Plaintiff has been sought out to perform additional work by other entities as a result of the technical ability, experience and skill derived from the contract with Defendant.

62.     As Defendant has received no benefit out of the bulkhead contract, an inequity would result if Plaintiff were to retain the benefits of additional technical ability, experience and skill and additional requests for work.

63.     Defendant is entitled in equity to seek restitution for the value of the benefits wrongfully retained by Plaintiff.

## RELIEF REQUESTED

WHEREFORE, Defendant respectfully requests this honorable court to enter judgment in its favor and provide the following relief:

1.     Dismiss Plaintiff's Complaint.

2.     Award Defendant damages in the amount of $200,000 (Two Hundred Thousand Dollars) or as may be proven at trial, including without limitation, compensatory and exemplary damages, plus interest and costs;

3.     Award Defendant any attorney fees and costs incurred as a result of this litigation; and

4.     Award Defendant any further relief this Court deems fair and just.

## JURY DEMAND

Defendant hereby demands a trial by jury.

14

Dated this 6 day of May, 2014.

von BRIESEN & ROPER, s.c.
*Attorneys for Defendant*

By: _____

Beth J. Kushner, SBN 1008591
Terry E. Nilles, SBN 1017916
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Phone: (414) 276-1122
Fax:    (414) 276-6281
Email: bkushner@vonbriesen.com
       tnilles@vonbriesen.com

OF COUNSEL:
Andrew M. Bossory
LORANDOS JOSHI
2400 S. Huron Parkway
Ann Arbor, MI 48104
Phone: (734) 545-2919
Email: a.bossory@lorandoslaw.com

24571881_1.DOCX